UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA,

   -v-                                                                                                  No.  20-CR-126-LTS

JOSE FLORES,

        Defendant.

-------------------------------------------------------x

## MEMORANDUM ORDER

Defendant Jose Flores has been detained at the Westchester County Jail ("WCJ") since his arrest on February 20, 2020, pending trial on charges of violating 21 U.S.C. § 846 by conspiring to distribute heroin, fentanyl, and crack cocaine in violation of 21 U.S.C. § 841(b)(1)(A); and possession and use of a firearm in furtherance of a federal drug trafficking crime (distributing heroin, fentanyl, and crack cocaine), in violation of 18 U.S.C. § 924(c)(1)(A)(i), (ii), (iii) and 2.  By letter, Mr. Flores moves for release on conditions of bail in light of the COVID-19 health crisis.  (Docket Entry No. 67.)  The Government opposes Mr. Flores's motion.  (Docket Entry No. 74.)  Mr. Flores has filed a reply.  (Docket Entry No. 77.)  The Court has considered carefully all of the written submissions and arguments, and has also reviewed Mr. Flores's Pretrial Services report, dated February 21, 2020, and the transcript of the detention hearing before Magistrate Judge Cave on February 24, 2020.

On February 24, 2020, Magistrate Judge Cave determined pursuant to 18 U.S.C. § 3142(e)(1) that "there are no conditions . . . that would reasonably assure [that Mr. Flores] would not be a danger to the safety of the community," and she ordered Mr. Flores detained pending trial.  (Docket Entry No. 67-1 at 18.)  Judge Cave based her determination on (i) Mr. Flores's

failure to rebut the presumption under 18 U.S.C § 3142(e)(3) that no condition or combination of conditions will reasonably assure the safety of the community; (ii) the strength of the evidence against Mr. Flores, particularly his arrest in the gang's stash house and social media posts suggesting that Mr. Flores made large sums of money selling narcotics; (iii) Mr. Flores's criminal history—including his October 2019 arrest on drug possession charges and his alleged commission of the crimes charged in the indictment while he was on probation for a 2016 offense—suggest an inability to comply with court directives; (iv) the Government's proffers that Mr. Flores has access to firearms and has threatened violence against others in the past; (v) his lack of legitimate employment history; (vi) Mr. Flores's history of drug abuse; (vii) the seriousness of the charges against him; and (viii) his ability to continue to communicate with other members of the narcotics conspiracy while on home confinement.  (Docket Entry No. 67-1 at 18-21.)

Mr. Flores now renews his bail application, arguing that his "contraction of the COVID virus 'has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of [Mr. Flores] as required and the safety of the community.'"  (Docket Entry No. 67 at 3) (quoting 18 U.S.C. § 3142(f)).  The Court concludes that Mr. Flores has demonstrated sufficiently changed circumstances to warrant reopening of his bail proceedings; however, he has not proffered any basis for the Court to conclude that the fact that he has contracted COVID-19, standing alone, demonstrates that there is any condition or combination of conditions that will reasonably assure the safety of the community, particularly because Mr. Flores has now recovered from the disease.  (Docket Entry No. 74 at 1, 6.)  Therefore, detention is still required under 18 U.S.C. § 3142(e).

Mr. Flores also seeks "temporary release for the duration of the COVID-19 outbreak, pursuant to 18 U.S.C. § 3142(i)," based on concerns for his physical well-being and his ability to "properly defend himself against the pending charges."  (Docket Entry No. 67 at 8.)  Under 18 U.S.C. § 3142(i), the Court has the legal authority to grant relief from an order of detention entered under 18 U.S.C. § 3142(e).  Section 3142(i) permits the temporary pretrial release of a defendant otherwise requiring detention into the custody of a U.S. marshal or other "appropriate" person where "the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."  18 U.S.C. § 3142(i).  Courts in this District have done so in appropriate cases; indeed, in limited circumstances, a serious medical condition can constitute a "compelling reason" under this provision.  See, e.g., U.S. v. Perez, No. 19 Cr. 297 (PAE), 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (granting bail application of 65-year-old defendant with COPD, pursuant to 18 U.S.C. § 3142(i), in light of "unique confluence of serious health issues and other risk factors facing this defendant, . . . which place him at a substantially heightened risk of dangerous complications should [he] contract COVID-19").  Mr. Flores has the burden of showing that temporary release is necessary under 3142(i).  See U.S. v. Dupree, 833 F. Supp. 2d 241, 246 (E.D.N.Y. 2011).

        Mr. Flores's argument regarding temporary mitigation of the danger to the community by separation from the neighborhood in which the alleged criminal activity occurred does not address sufficiently the very serious issue of the danger he poses to the community, given the Government's proffers concerning his involvement in violence against rival gang members, the strong evidence relating to the instant charges, which includes video evidence of at least a dozen sales of fentanyl and crack to an undercover law enforcement officer and cooperating witness testimony that Mr. Flores had access to firearms, and his alleged

commission of the crimes charged here while he was on state probation.  While his proposed place of home confinement is indeed removed from the neighborhood where the events charged in the Indictment occurred, this does little to "ameliorate the concern that Mr. Flores would be in communication with alleged co-conspirators in the Bronx," in light of the Government's proffers demonstrating that Mr. Flores is capable of using electronic methods of communication, such as social media, that would allow Mr. Flores to continue to communicate with his co-conspirators from afar.  (Docket Entry No. 74 at 3-4.)  Supervision and policing resources are particularly strained during the current pandemic conditions, heightening the importance of protection of the community from persons and circumstances that pose documented threats.

        The Court does not take lightly the elevated risk that Mr. Flores's confinement poses for his own health and safety.  The current public health crisis presents an elevated risk for those who are confined, as compared to those living in situations where social distancing is more feasible and where the most effective cleaning products are more readily available.  The reality of this risk was confirmed by Mr. Flores's positive COVID-19 test.  However, the Government proffers proffered that "[WCJ] has protocols in place to treat COVID-19 patients such as defendant," and Mr. Flores has reportedly recovered.  (Docket Entry No. 74 at 6.)  The Government has further proffered that WCJ "has taken measures to protect inmates, including [adopting] new regulations designed to reduce large gatherings, to ensure that common areas are sanitized, and to screen new inmates for signs of COVID-19." (Docket Entry No. 39 at 3-4.) WCJ "has [also] suspended personal inmate visits and is only permitting attorney visits in non-contact booths." (Docket Entry No. 39 at 4.)  WCJ's mitigation measures do not, and cannot, eliminate completely the risk of COVID-19, but these measures are calculated to mitigate the risk of infection in its inherently close quarters, for all persons in custody and WCJ staff.

Although, in certain cases, the specific medical conditions of individual pretrial detainees may create risks of infection or severe symptoms that are so substantial that they reduce or outweigh the safety risks posed by temporary release of such detainees, the Court finds that, in Mr. Flores's case, the danger to the community presented by Mr. Flores's release outweighs substantially the generally heightened the risk of exposure to COVID-19 that he faces while in detention, particularly because Mr. Flores is young with no existing medical conditions and has already contracted and recovered from the disease.  Mr. Flores's understandable need and desire to maximize his ability to protect himself from re-infection do not reduce significantly the risks of community violence and flight that he presents.  The Court concludes that Mr. Flores's present condition, which does not include any specific attributes that make him particularly vulnerable to severe illness from COVID-19, should he re-contract the disease, does not provide a basis compelling enough for the Court to disregard the serious danger his release would pose to the public, particularly in light of the Government's proffers concerning Mr. Flores's involvement in gang-related narcotics sales involving dangerous firearms.

The Court also finds Mr. Flores's argument that temporary release is warranted because he faces challenges in preparing his defense insufficient to meet the statutory standard.  This case is in relatively early stages, and the next proceeding is a status conference scheduled about two months from now, on June 25, 2020.  There is no trial, evidentiary hearing, or other substantive hearing upcoming in Mr. Flores's case.  Mr. Flores stresses the need for informed strategic decision-making and review of discovery in the early phases of a case, which is an important concern.  Access to attorney-client communications at WCJ is, indeed, currently more limited than it would be under non-pandemic circumstances.  However, the Government proffers that, at present time, WCJ still facilitates non-contact attorney visits and telephone calls with

counsel.  While the Court recognizes that the limitations on attorney-client communications are problematic in that they may constrain more desirable methods of case preparation, here, given the early stages of the case and the exigencies created by the COVID-19 crisis, the Court concludes that the limitations placed on Mr. Flores's access to counsel are not compelling enough to warrant temporary release under Section 3142(i).

The Court, accordingly, finds that Mr. Flores has not sustained his burden of demonstrating that temporary release pursuant to 18 U.S.C. § 3142(i) is necessary or appropriate in his case.  The Court therefore denies Defendant's application for temporary release pursuant to 18 U.S.C. § 3142(i).

This Order resolves Docket Entry No. 67.

SO ORDERED.

Dated: New York, New York
April 30, 2020

   /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge